21-35 Courthouse News Service v. New Mexico Administrative Office. Ms. LeCocq. Good morning and may it please the courts. My name is Erin LeCocq and I'm here on behalf of Appellants of the New Mexico State Courts. This case is about a state's ability to operate its own court systems. And there are two points that I would like to address with the court today. First, the court should abstain under O'Shea because any order would require continued oversight of the state and its administrative operations of its courts. Second, the district court's preliminary injunction order makes two legal errors. First, the court recognized a right of press access to documents that were not yet court records. And second, the court established a bright line deadline to process new complaints that does not account for the state's interests in its own judicial administration. New Mexico courts should be permitted to operate their state courts without federal interference. And this is especially true for the handling of pre-acceptance complaints that have not yet become additional a judicial proceeding to which a right of press access exists. What do we do with all of the courts that have ruled that such an order that's entered here, maybe not in the specific that it was entered here, can be upheld and is proper and is not an interference in state proceedings? Under O'Shea, O'Shea specifically says that each abstention question is very fact specific. So we would need to look at New Mexico very specifically. And New Mexico differs from the rest of the cases where in which the abstention argument was denied in two different ways. First, New Mexico is a unified judiciary. And even though one district, judicial district was mentioned in the complaint, any judicial district in New Mexico is going to affect the entire state. And because of that, we have to look at the entire state as a whole from, you know, the district court in Bernalillo where Albuquerque is to the district court in the 10th judicial district where Tucumcari is. The disparity is very clear. The second is that because of the unified judiciary structure in New Mexico, there is an administrative order from the New Mexico Supreme Court that states specifically that the press right of access attaches when the press can access these documents, which is as soon as the clerk accepts them and then they are able to be retrieved from the online system known as SOPA. Well, do we have New Mexico's Supreme Court rules and procedures that directly address press access and when press access is permitted? Yes, Your Honor. There is a New Mexico Supreme Court order and it's 17, it's mentioned in the briefing, 17. And it specifically says that access to documents on the online access system, which is known as SOPA. And immediately, as soon as the clerk accepts those documents, they become a court record and are immediately populated onto SOPA. So the press access it at that point. So it is implicitly saying that the New Mexico Supreme Court has said the press access these documents when the clerk has pressed accept, which is contrary to the order that we have here. Not when the filer has pressed the submit button. Correct. Correct. Once the filer presses the submit button, that is when the clerical review occurs. After the clerks finish reviewing, they press accept. But if you press the submit button and you're, you know, within 20 minutes of the end of your statute of limitations, you're okay, right? It's filed. The document is considered filed at the time that the filer presses submit for purposes of statute of limitations and other deadlines, but not for purposes of it becoming an actual indelible court record. That is correct. Is that the same process that the court had before the electronic system was implemented? It's very similar, Your Honor. Prior to e-filing, a litigant or a filer would line up in front of the clerk's window, would hand the document to the clerk that would be akin to pressing submit. Then the clerk would review it, which is akin now to the clerical review that we have. And then when the clerk would stamp it and take it, that is when the clerk accepts it. So we have a very similar process, except instead of standing in line at the clerk's office, the line now occurs in the form of a review queue on the side of the clerk's office. And how long typically does the review queue last? I mean, what's the average length of time between filing and acceptance? During your initial evidentiary hearing about a year ago, I believe the average time was about 37 minutes, but that has changed over the past year. The majority of the courts in New Mexico are able to comply with the five business hour rule. And I will talk a little bit more about that later. So you've settled the case? No, because there's a disagreement between when the press right of access attaches and the hard deadline that was imposed that does not allow for any extraneous circumstances that each individual judicial district might face. What's the reason for acceptance even being a requirement? Why does the court care whether it's accepted or not before making that available? The clerical review is required in order to ensure that any documents that are deemed confidential or otherwise protected by state statute are not accidentally submitted and made available to the press or to the public. And so the court really needs to go through that administrative process to ensure that those documents are, number one, reliable for the court, that there aren't any mistakes such as being filed in the wrong county, and then also to ensure that there is no mistake in a confidential document being accidentally filed through the e-filing system. And so that time between submission, the clerical review and acceptance is really critical for the courts in order to maintain the trust and transparency that the public have in the courts in New Mexico. Do you acknowledge there's some sort of a limit on how long the court could have to accept before you'd run afoul of the qualified right under the First Amendment? We believe that there could be a limit, yes, but that instead of the position that we have here with the preliminary injunction which gives a five business hours deadline, and that's it, within five business hours and it's a hard deadline, that a limit perhaps that was seen in cases like Planet or Schaeffer where they say that it could be filed on the same court day when practicable or on the next court day if not, but gives a little bit of leniency to the state to ensure that all 13 of New Mexico's judicial districts are able to comply with the understanding that there are going to be some extraneous circumstances across the entire state. What makes this injunction, you know, going back to abstentions, so egregious that it really substantially interferes with the functions of a state entity? There are two reasons, Your Honor. The first is because we have this New Mexico Supreme Court order that if the federal court were to say, and this is exactly what the preliminary injunction does, it says the press have a right of access at submission, that order is directly contrary to the New Mexico Supreme Court order which says that the press have access at acceptance. It would essentially require the clerks to either obey a federal order or a New Mexico Supreme Court administrative order, which was the situation that the Seventh Circuit faced in Brown, or it would require the Supreme Court, reaching into the state and ordering the state Supreme Court essentially to rewrite its orders is far too intrusive under the principles of comity that have been recognized. Is it a black and white rule that you're advocating or is it a matter of degree? In other words, would there be circumstances where federal court intervention would be appropriate? Because again, O'Shea said that each one is very fact specific, that I don't think it's a black and white rule, and I think that the court, the Seventh Circuit in Brown recognized that it's not a black and white rule, but in this particular case for this particular set of facts in New Mexico with the way that New Mexico's court systems are structured, that this particular situation would be too intrusive for New Mexico. Along those same lines, all of the other cases where the district court has failed or the circuit courts have failed to abstain or denied abstention, they have stopped at a Younger analysis where they've said that this particular case does not fit squarely within Younger, but what the Seventh Circuit has done is take those principles from Younger and apply them to this particular case, which is what we're asking the court to do here, that these underlying principles of federalism and comity between the states and the federal system would be best served if the state courts were allowed to run their own system, to operate their own state court systems. And even though the clerical review may not look at the outset like it's going, like it's an actual operation in the state court system, when you pull back and look at the entirety of New Mexico courts and the court structure, the idea that the New Mexico Supreme Court would be unable to make rules about who can access documents when and about what the clerks are allowed to do in each respective district across the state, those are the, those, that really calls those underlying principles underlying Younger. Well, are you really, go ahead. Weren't those differences submitted to the district court and in effect made findings of fact, I guess, that five hours was a reasonable accommodation that would work, you know, across the range of judicial districts in New Mexico and we're here on abusive discretion, right? So there's, there's several questions in there, Your Honor. First, I don't believe that we have abusive discretion. It's, the standard of review here, because we have embedded legal questions contained within Judge Browning's order, we believe are reviewed de novo. The, we have two separate issues with Judge Browning's order. The first is that this is this abstention question, which he only analyzed under Younger and he did not continue the analysis under O'Shea, which we think was required. And second, because the five business hour deadline is a hard deadline, it fails to take into consider, it's a mistake of error, or I'm sorry, mistake of law, because it fails to take into consider the state's judicial administration, which is required under that second prong and the first prong of the press enterprise test. Was there any showing that the judicial, the There, we, there, there is a possibility and it, it is possible that the judicial districts can comply, but not 100% of the time. And that is what the preliminary injunction requires, that they must comply 100% of the time with that five business hour rule. And that simply is not possible. And if you look again under the O'Shea abstention doctrine, O'Shea would apply in this It affects the operation, again, the operation of state courts. And one of the issues involved in the operation of state courts is ensuring that each of New Mexico's 13 judicial districts that comprise 33 counties across the entire state, that each one of them complies 100% of the time. And the amount of federal oversight that would be required to ensure compliance every single time is too much. What rule would you write if it's not five business hours? If taking away the other issues in this case, looking only at the five business hour rule, we would request something that allows for a little bit more latitude for the courts, such as what was done in Plano and Schaefer, which says on the same court date when possible, or if not possible on the next court date. But it needs to allow for some accommodation for the disparity in New Mexico court systems and across, across the entire state. And I would like to reserve the remainder of my time for rebuttal. Thank you. Thank you, counsel. Mr. Federle. May it please the court. I'm John Federle with Brian K. Blayton-Paysner, counsel for Courthouse News Service. This case involves three issues on appeal. First, whether the district court erred by not abstaining. Two, whether the district court erred when it concluded that the right of access, the First Amendment right of access attaches when complaints are submitted to the district courts in New Mexico. And three, the preliminary injunction that the court crafted that effectively provides a five hour, five business hour window under which complaints can be withheld and delayed without constitutional scrutiny. We believe the court got the first two issues correct. I'll be able to speak to them and respond to counsel's arguments. As for the third, we agree with the, with the appellants that the, the bright line five business hour rule is erroneous, probably for very different reasons than counsel. But if we go to the Press-Enterprise II test that is really at the heart of this case, we just don't believe that that bright line five hour rule can be squared with the second part of the Press-Enterprise II test. I'll speak to that in a minute, but let me first, I'll start with abstention. Then we can talk about Press-Enterprise II. As for abstention, just last week, the Eighth Circuit joined the Fourth and the Ninth Circuits in rejecting abstention challenges in First Amendment cases involving the exact same relief courthouse news seeks here. And so that makes a total of 10 circuit and federal district courts, including our court below, that have reached that same conclusion that these First Amendment claims involving a right to access to new civil complaints does not warrant any abstention. And that leaves the Seventh Circuit and the Brown decision that counsel just spoke to as the lone outlier. And I believe it's safe to say at this point in time that Brown has not survived the test of time and it was wrongly decided. And one of the main reasons I believe it was wrongly decided is because Brown did not follow controlling Supreme Court authority on the issue of abstention. In 2013, Sprint Communications v. Jacobs, the Supreme Court clarified the reach of younger abstention by identifying three specific and exceptional categories where younger abstention is appropriate. And those were the three that came from New Orleans Public Service, Inc., NOPSI, and they are a state criminal proceeding, a civil proceeding, an enforcement proceeding that's akin to a state criminal proceeding, and a state proceeding that involves the state's interest in enforcing its orders and judgments. And the example the court gave was a civil contempt proceeding. So we don't have anything remotely close to that here in this case. We have, you know, administrative practices involving access to new civil complaints that simply do not fall within the three exceptional circumstances identified by the Supreme Court in Sprint Communications. And this court has recognized that limitation, the Katzenhoff v. Thompson case cited in their papers, a very elaborate footnote that outlines this curtailing of younger abstention. So, you know, unable to rely on younger, what the appellants are doing is trying to latch onto O'Shea as some free-form brand of abstention that can apply anywhere a particular set of facts may arise. And I think that's completely counter to the controlling Supreme Court authority. And we have to remind ourselves, O'Shea is a progeny, a progeny of younger. You know, O'Shea involved, you know, relief that was aimed at future criminal state court criminal proceedings. At that point in time, younger was limited to ongoing parallel criminal proceedings. And so the Supreme Court needed to extend the reach of younger to address this relief that would have had a forward, future-looking impact on state proceedings. But it is very different, the scenario in O'Shea is very different from the scenario in younger or the three specific types of cases that are listed following younger. I believe that's correct. Because you're not, you don't have a specific proceeding in front of the court that is a state proceeding. You've got something that may happen. It's out there somewhere. I think the future proceeding still needs to fit within the three exceptional circumstances identified by the Supreme Court in Sprint Communications. And we see that the Northern District of Florida in the Foreman case, we've cited that. In that case, Judge Walker acknowledged that, you know, the Supreme Court has since cabined, to use Judge Walker's words, O'Shea and Rizzo with the Sprint Communications case. And we also have the Eighth Circuit just last week acknowledging that, you know, certain language from O'Shea, even read most liberally, just does not extend the reach of younger to the case that was before it, which sought the exact same relief we have here. So the idea that O'Shea is simply this free-form catch-all that can be applied when younger does not, I don't believe is supported by the law. And it's why we see this overwhelming weight of authority that has declined to follow Brown. So to counsel's argument about the Supreme Court order, just real briefly, the Supreme Court order, I don't believe, has the same reach and effect that counsel would argue. It doesn't speak to when new civil complaints should be made available to the press, nor does it instruct or require clerks to deny access to non-confidential civil complaints until after completion of processing or acceptance. So it's an administrative order. It doesn't relate to a proceeding. And this administrative order does not fall within any of the three exceptional circumstances that were outlined by the Supreme Court in Sprint Communications. Well, I thought counsel said that the Supreme Court order did address press access. It does in, I think, a much more general sense than as counsel represents. And it does speak to the issue of, for instance, you know, making sure that complaints are made available online subject to New Mexico law regarding protection of already addressed that in ways that do not require, you know, clerk review of individual complaints or the restriction of access to new complaints while they perform their administrative functions. And so I think this is an appropriate time to shift our focus to the Press Enterprise 2 test because that's... Just on that last point, how has New Mexico addressed the confidentiality problem? So in a couple of ways, and let me just first start by the e-filing system itself. New Mexico uses the same e-filing system that the Vermont courts use, for instance. And that's a case where the permanent injunction was entered against the Vermont courts and they've complied with it. Within three weeks, they were able to comply with it. So the filtering of the e-filing system automatically accounts for documents that are coming in that might be confidential, private, or whatnot based on filer designation. The filer designates the nature of the filing and the e-filing system filters and safeguards accordingly. New Mexico does additional things. If a complaint falls within a type that is not public, they're required to be filed in paper, not e-filing. So here we're talking about new e-filed civil complaints and access to them. The types of complaints that need to be, you know, kept out of the public domain, they're not even e-filed in the first place. But they could be. But they could be. I mean, it's a crazy idea, I know, but sometimes counsel don't follow the rules. And I don't think the record is full of a sufficient example of this being a pervasive enough problem that would warrant suspending the First Amendment and restricting access to the vast majority. But it does give fuel to the argument that there is a purpose for the clerk review of the document. And I think that purpose is best analyzed under the second part of the Press Enterprise 2 test, and it doesn't provide a basis for abstention, which is what counsel's arguing here, which I would like to focus on that test because it really lies at the heart of this case. And, you know, it's a two-part test. The first part asks if there's a right of access that particular document at issue and relatedly when it attaches. Second part is constitutional scrutiny. You know, are the delay-causing practices justifiable under the, you know, constitutional scrutiny? And then counsel agrees in their papers at page 37 of their opening brief that the Ninth Circuit's articulation of that scrutiny, rigorous scrutiny, applies here. So under rigorous scrutiny, can they justify their practices? I'll briefly answer Your Honor's question as to number two, and then I'll go back and address one and two together because there might be important interests that would, you know, warrant the court's practice. They will have the opportunity under the second part of the Press Enterprise 2 test to make that argument, and they will also have to show that they have no reasonable alternatives. And we think that's where they fail to meet their burden and will be able to fail to meet their burden in district court as the case proceeds because we know from countless examples of other courts, including some that use the exact same e-filing system, Vermont included, that courts can provide pre-processing access. They can comply with the injunctions that have been issued against them. And so, you know, the lack of reasonable alternatives is a significant reason why there's just not going to be this kind of ongoing interference. If they fail to meet their burden under the second part of the test, then that means there was a viable alternative. The district court does not need to dictate to them what alternative to choose. They can choose the alternative of their liking, but ultimately they can't sustain the practice that delays access in violation of the First Amendment. So, you know... Well, you would agree that some delay would be appropriate for the court to look at confidential information or make a determination that a complaint, you know, may not be subject to public scrutiny right away? Well, not necessarily. I think the e-filing systems, what we've seen in other courts, is that there are alternative ways of safeguarding that concern and protecting it. What's the best way to do that, or how would you fashion the injunction? Well, so the injunction is problematic because it allows this five-hour grace period. It's a de facto... And you wouldn't even allow that. It'd be instant access. Is that what you want? I think instant access is on the table. It's not... I want to know what you want. We want undelayed access. That's what I thought. We want undelayed access. And the reason why we are entitled to undelayed access is because the right of access attaches when the document is submitted to the court. That's... Every federal court that has considered this issue has agreed with that. It's consistent with New Mexico law. There's, you know, a New Mexico rule, I believe it's 5... Excuse me, 1-003. An action is commenced by filing a complaint. New Mexico case law, Ennis v. Kmart. A document is filed when it's delivered to the court. Rule 1... Well, it's a question of what's a substantial justification for whatever rule we apply here. You want undelayed access. I get that. If we disagree with undelayed access, between that and five hours, is there a sweet spot that you could persuade us to... That will hinge on the defendant's ability to satisfy their burden under constitutional scrutiny. That's the second part of the test. And that's where the district court erred, quite frankly. The district court attempted to define timely access as access within five hours. That was based upon an erroneous factual issue. That's the subject of a pending reconsideration motion. Setting that aside, that definition was then inserted into the rigorous scrutiny test. That's the test that's at page 37 of the appellant's brief. He rewrote the test to insert the five-hour grace period, meaning that there's a five-hour window where complaints are not subject to any scrutiny at all. And a court clerk can delay or withhold access for any reason or no reason at all. That does not square with and is inconsistent with the court's correct holding that the right of access attaches upon submission to the court, which is when the document is filed under New Mexico law. Did you do the trial blow or the evidentiary proceedings? Were you counsel? I was not counsel in those proceedings. I just appreciate your interpretation of the record as to how many civil complaints actually miss the five-hour rule that we have here. Yeah. Is there any track record on whether... There is a developed record on the delays. And I think it was disputed down below because we again have this issue of how do we count delay? I know opposing counsel is counting the delay from after they complete their processing and acceptance. So they're kind of starting the First Amendment clock afterwards. We're saying earlier... If you wanted to persuade us to overturn the five-hour rule, which you do, I'd expect you to say one of the reasons is because too many complaints are bleeding over five hours and we have a right to see those. Well, the record does show that. There are delays that are beyond the five hours. There are delays that are beyond one or two days. Should there be any leeway? The courts that have really talked about Press Enterprise Test 2, they've given leeway to the courts. I mean, here when you talk about a rule that's to be applied in the entirety of the state of New Mexico... I mean, I'm from Kansas and I can relate. There are places that are very small, very understaffed, and to slam in a rule that's going to apply across the state, shouldn't there be some leeway? I don't believe so, Your Honor, and here's what I mean by that. We're not being unsympathetic to the court clerks and their need to do their jobs. What we're saying is they cannot restrict and withhold access while they do their jobs unless there's some compelling reason and no reasonable alternatives. And that's the second part of the Press Enterprise 2 test. And the district court failed to apply it faithfully. And that's what we would ask the district court to do on remand going forward, is faithfully apply that test. How about snowstorm, dust storm, I don't know what? I think the Gable opinion out of Vermont is... Any reason at all, there should be absolute access in your view. No leeway. I think it hinges on the alternatives. If there are alternatives that would provide access while also addressing the court's administrative concerns and their interests without delaying it, in an e-filing world, the fact that a court clerk is unable to come to a courthouse because of a snowstorm doesn't have to preclude access. This is the federal courts. This is PACER. You file the document, it's automatically accepted. The court's comments about what is acceptance, it's a clerical administrative term. In PACER, once the document is filed and submitted, it's immediately available. There could be snow on the filer's end and on the court's end, but it's not going to affect the fact that a document has been filed, a right of access has attached, and access should be made available. Computer down, software not working. We don't care. Well, we're not asking for something that would be so unwielding to account for... Well, isn't the five-hour business rule unwielding? I think it's unwielding on the First Amendment because it allows for a grace period that shouldn't exist under the second part of the Press-Enterprise II test. To challenge the five-hour period, did you have to cross appeal? Well, you're correct that we did not cross appeal. I don't think necessarily. What we're saying is we don't disagree with the defendants that it should be vacated. We have different reasons for why it shouldn't be vacated. We didn't cross appeal for a number of reasons, including this is a preliminary order. We're happy to proceed with the case going forward and being able to address these issues with the district court as the case proceeded. We also filed a reconsideration motion meant to address a factual error that was lying at the heart of the five-hour rule. We did not cross appeal, but we don't think that precludes us from agreeing with defendants that the five-hour rule is erroneous and that the district court should simply try again. What we would ask this court to do is simply provide some clear instructions for the district court going forward that clarifies the Press-Enterprise II test, recognizes that there's no dispute between the parties that the rigorous scrutiny test as articulated by the Ninth Circuit, that's the Ninth Circuit's articulation of Press-Enterprise II, is the appropriate test here. Again, page 37 of their brief, we agree that test should be applied but faithfully, without modification, without the insertion of a bright line five-hour grace period that allows delays for any reason or no reason at all. And if defendants are able to meet their burden of a showing an important interest that cannot be met by a reasonable alternative, then court entities won't be entitled to relief. And these concerns that we've heard will ever come to pass. But if they're unable to meet their burden, that means they have reasonable and less restrictive alternatives. In which case, there's really no harm to providing the access, even if it is access on receipt. And whether we call that contemporaneous, undelayed, immediate, it's kind of beside the point. It's not the court's job to divine the correct amount of time of permissible delay. Judge Rice addresses this in her order out of Vermont. It's the court's job to determine whether any delay can be justified under the press enterprise to test. And if the defendants cannot satisfy their burden, then courthouse should be entitled to on receipt, undelayed, whatever we call it, but undelayed access. All right, counsel. Thank you. Your time's expired. Ms. LeCoke, you had a little bit of rebuttal. Thank you, Your Honor. You're welcome. Just briefly, Your Honor, I would like to address just four quick points. O'Shea, the abstention doctrine under O'Shea has been recognized by this court in Joseph A. X. Rel. Corrine Wolf v. Ingram, where it said that the federal court should not enforce a decree that will interfere with the operations of state court, which is precisely what we're that we have here. And it has been recognized that O'Shea is not merely a branch of Younger, but it's actually separate and distinct from Younger in both or the way that Younger has been identified under Sprint in both Disability Rights of New York and Miles v. Wesley out of the Ninth Circuit, where the court says that when O'Shea is implicated, abstention is proper when it implicates the question of the defendant's compliance that could be the subject of future challenges, which, again, is exactly the situation that we have here. I would like to talk briefly about the Press-Enterprise Test. The First Amendment grants the press access to court records. And this comes from, historically, the press being given access to court proceedings, to criminal court proceedings, and then to documents. And what we have here is that Courthouse News is requesting access to pre-acceptance documents, which are not yet court records. And what should be allowed is the access to the indelible document upon which the court relies, which is a court record, which is what Courthouse News currently has. Under your argument, would it be permissible for the clerk to hold back civil super slow court or whatever? Is there any time limit that, you know, that would not evade press enterprises? I think going with what Judge Briscoe had said, that sometimes it might be required. I don't think it would be very often. That is certainly not something that has occurred in New Mexico very often. But there are occasions where, for example, there was a fire in Rio are unforeseeable, are situations that might occur. And there needs to be some leeway to account for that. Right. Counsel, appreciate your argument. Your excuse in the case shall be submitted.